UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY A. CALIGUIRE, | No. 2:16-cv-00872-CKD |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Jerry A. Caliguire seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge (ALJ) is based upon legal error and is not supported by substantial evidence.  (ECF No. 17.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 22.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 23.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned based on the consent of the parties, pursuant to Local Rule 302(c)(15). ECF Nos. 6 and 9.

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on September 20, 1964; has finished high school; attended trade school as an auto mechanic; and completed some college courses.[2] (Administrative Transcript ("AT") 37–38.) On October 6, 2011, plaintiff applied for DIB, alleging that his disability began on January 16, 2010. (AT 196–99.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on February 6, 2013. (AT 30–45.) The ALJ issued an unfavorable decision on April 26, 2013, but the Appeals Council granted plaintiff's request for review, and remanded the case for further proceedings. (AT 99–110, 116–18.) The ALJ then conducted two additional hearings on September 18, 2014 and June 26, 2015 (AT 46–53, 54–62), and subsequently issued a decision dated August 6, 2015, determining that plaintiff had not been under a disability as defined in the Act, from January 16, 2010, through the date last insured. (AT 10–24.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 28, 2016. (AT 1–3.) Plaintiff subsequently filed this action on April 4, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the findings of the Veteran's Administration ("VA"); (2) whether the ALJ improperly discounted plaintiff's credibility; and (3) whether the ALJ's residual functional capacity ("RFC") determination was unintelligible.[3]

/////

/////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

2

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ concluded that plaintiff last met the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

insured status requirements of the Act on March 31, 2015. (AT 12.) At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 16, 2010 through his date last insured. (AT 13.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, right adhesive capsulitis, right acromioclavicular joint osteoarthritis, bilateral knee osteoarthritis, scoliosis, bilateral foot pronation, increased thoracic kyphosis, affective mood disorder, personality disorder, and post-traumatic stress disorder ("PTSD"). (Id.) However, at step three the ALJ concluded that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 16.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b), except that plaintiff had certain physical and mental limitations. (AT 19.) At issue here are the mental limitations:

> Mentally, he was frequently able to understand, remember, and carry out simple job instructions. He was able to occasionally understand, remember and carry out detailed job[] instructions and occasionally, complex instructions. He could occasionally and frequently interact with the general public. He was able to frequently interact with co-workers and supervisors. He was able to frequently adjust to simple changes in the workplace and frequently make workplace judgments.

(Id.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work, through the date last insured. (AT 22.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, there were jobs that

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

existed in significant numbers in the national economy that plaintiff could have performed. (AT 23.) As such, the ALJ concluded that plaintiff was not under a disability as defined in the ACT from January 16, 2010 through March 31, 2015. (AT 19.)

    B.    <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

        1.    *Whether the ALJ improperly rejected the findings of the VA*

Plaintiff argues that the ALJ failed to properly consider the VA's determination that plaintiff was "totally and permanently disabled due to his service-connected disabilities." (ECF No. 17 at 13.) The Ninth Circuit has held that

> Because social security disability and VA disability programs "serve the same governmental purpose—providing benefits to those unable to work because of a serious disability," the ALJ must give "great weight to a VA determination of disability." [. . .] An ALJ, however, "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record."

Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010) (citing McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir.2002)). Moreover, the ALJ's weighing of a VA disability rating need not be the only viable conclusion, nor the conclusion a claimant would prefer. As explained, the ALJ is responsible for resolving any ambiguities in the record, and the court will not overturn an ALJ's conclusion when the evidence is open to more than one rational interpretation. See Edlund, 253 F.3d at 1156; Tommasetti, 533 F.3d at 1038.

On February 12, 2013, the VA determined that

> A claim for unemployability was not inferred at this time based upon a review of the totality of the records. Although the Veteran is not currently employed the evidence is not consistent on what is his current status and how it may relate to his service connected disabilities. Recent evidence notes that the Veteran is a student, is additionally pursuing employment, and has many good prospects.

(AT 607.) Subsequently, on October 10, 2013, the VA assigned plaintiff a 100 percent service connection for PTSD with major depression (AT 616) and found him to be totally and permanently disabled. (AT 624.)

The ALJ gave great weight to the VA's initial "conclusion that the claimant had service-connected impairments but remained employable." (AT 22.) However, the ALJ rejected the

5

VA's 100 percent rating for his PTSD because "the record still shows that he was active and capable of working prior to his date last insured." (Id.)

In support of this determination, the ALJ pointed to several notes from treating VA psychologist Frederick Stich, Ph.D. that undermined the VA's finding of complete disability (id.): on July 9, 2014, plaintiff reported plans to take a long trip to Florida, as well as currently working on bicycles, walking, and wanting to fish more often (AT 1307); on July 30, 2014 he exhibited keen insight by attributing Iraq-related nightmares in part to falling asleep while watching war movies (AT 1306); on August 28, 2014 he reported visiting pleasantly with his ex-wife's family, making progress balancing his needs with others, and going to karaoke for a couple hours each week (AT 1305); on September 16, 2014 he reported spending time repairing and selling used bikes, purchasing a new car for his wife, dealing with the stress of having to replace a defective car twice, using breathing and relaxation techniques with positive effect, as well as having infrequent nightmares (AT 1303); and on February 2, 2015, Dr. Stich reported that plaintiff was doing well in relation to his PTSD, he was able to provide emotional support to his soon-to-be ex-wife, and plaintiff noted that his relationship with his son was a bright spot in his life (AT 1297).

Additionally, in determining plaintiff's RFC, the ALJ gave "greater evidentiary weight to the opinion of State agency medical consultant, Barry Morris, Ph.D." because "[h]is opinion is supported by and consistent with the totality of the medical record." (AT 21.) Dr. Morris opined that plaintiff was capable of working but that he was: moderately limited in understanding and remembering detailed instructions; able to understand simple instructions; able to carry out simple tasks with appropriate levels of attention and concentration; moderately limited in his ability to interact with the general public; moderately limited in his ability to get along with coworkers or peers; and able to function best in settings that do not require intensive social interaction. (AT 89–90.)

As the ALJ concluded, this determination is supported by substantial evidence in the record. Objective testing by Sid Cormier, Ph.D. in 2011 revealed that plaintiff had superior concentration capacity, because he was able to recall nine digits forwards and four digits backwards. (AT 18, 487.) Additionally, plaintiff achieved a full scale IQ score of 106, which

"places his current level of intellectual functioning within the average range, equaling or surpassing the performance of 66% of h[is] age mates who took this test." (AT 18, 488.) Further, plaintiff was assessed a global assessment of functioning ("GAF")[5] score of 60, indicating moderate symptoms. (AT 14, 85, 490.) Plaintiff was also able to attend college (AT 18, 66), and in 2012 he was actively seeking employment with several promising prospects (AT 20, 545).

Therefore, the ALJ gave "persuasive, specific, [and] valid reasons," supported by substantial evidence in the record, for dismissing the VA's total disability determination, and relying instead on the opinion of Dr. Morris. See Turner, 613 F.3d at 1225.

        2.    *Whether the ALJ improperly discounted plaintiff's credibility*

Plaintiff alleges that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective complaints regarding his mental limitations. (ECF No. 17 at 17.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

---

[5] A GAF score reflects a clinician's rating, on a continuum of mental health-illness (0-100), of a patient's overall functioning. Diagnostic and Statistical Manual of Mental Disorders, (4th Edition 1994) (DSM-IV), American Psychiatric Ass'n, pages 30–32.

be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of impairment due to anxiety, depression, and PTSD. Indeed, as detailed above, the ALJ included RFC limitations in plaintiff's ability to concentrate and interact, to account for his mental impairments. (AT 19.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his mental symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

            i.      Inconsistent assertions

The ALJ pointed out that plaintiff's alleged impairments are inconsistent with how he has presented to his medical practitioners, as he "has not always presented himself as a disabled individual." (AT 20.) This conclusion is supported by substantial evidence in the record. Plaintiff had reported that he had a temporary job at Cal-Trans in December of 2011. (AT 554.) In January of 2012, he was "actively seeking employment with several promising prospects." (AT 545.) In March of 2012, he reported that he wanted to work, despite being physically unable to do construction work anymore. (AT 534.) This evidence does not support plaintiff's assertions that he was mentally unable to work. Such inconsistent assertions are valid reasons for the ALJ to discount plaintiff's credibility. See Thomas, 278 F.3d at 958–59.

####　ii.　Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

A few paragraphs after the ALJ concluded that "claimant's subjective complaints are not wholly supported by the medical evidence of record" (AT 20), he explained that "claimant's mental RFC reflects Dr. Morris' opinion that the claimant can perform simple repetitive tasks best in settings that do not require intensive social interaction," which was less restrictive than plaintiff's subjective complaints. (AT 22.) As explained above, the opinion of Dr. Morris is supported by substantial evidence in the record. (See AT 66, 488–90, 545.) Thus, it is reasonable to infer that the ALJ properly relied on this objective evidence as one factor, when discounting plaintiff's subjective complaints of mental impairment, because the ALJ specifically relied on this evidence while crafting the RFC.

####　iii.　Daily activities

Substantial evidence also supports the ALJ's finding that plaintiff's daily activities are inconsistent with his allegations of disabling symptoms and limitations. (AT 20.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595,

600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ relied on assertions from plaintiff's then-wife, regarding plaintiff's daily activities. (AT 20.) Mrs. Caliguire claimed that plaintiff was able to help with household chores, care for the children, care for the pet, and attend school. (AT 265–69.) Evidence of these activities is also found in plaintiff's own assertions in the record. (See AT 257.)

To be sure, the record also contains some contrary evidence—such as not handling stress very well, and getting stressed out over changes—suggesting that plaintiff's activities are more limited. (AT 263.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

3. *Whether the ALJ's RFC determination was unintelligible*

Plaintiff asserts that "the ALJ assessed Caliguire as retaining a residual functional capacity that precludes him from working." (ECF No. 17 at 11.) Citing Social Security Ruling 83-10, plaintiff points out that "occasionally" means from very little up to one-third, whereas "frequently" means from one-third up to two-thirds. (Id.) Thus, according to plaintiff,

> The ALJ assessed that . . . Caliguire could perform simple job instructions for 67% of an eight-hour work day. AR 19, ¶ 5. Per social security ruling 96-8p, this was the most that Caliguire could

> do. SSR 96-8p. Thus, for the remaining 33% of an eight-hour work day, Caliguire cannot perform even simple job instructions. Therefore, the additional limitations that Caliguire was able to occasionally (33%) understand, remember and carry out detailed jobs instructions and occasionally (33%) perform complex instructions were inconsistent and meaningless.

(Id.) Essentially, plaintiff argues that the only cogent interpretation of the ALJ's RFC is that plaintiff can implement simple job instructions for two-thirds of a work day, and that he is not capable of any work for the remaining one-third of a work day.

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). Furthermore, "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). However, at the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the paragraph . . . and opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

In pertinent part, the ALJ's RFC stated that plaintiff "was frequently able to understand, remember, and carry out simple job instructions. He was able to occasionally understand, remember and carry out detailed job[] instructions and occasionally, complex instructions." While these sentences may have been inartfully written, plaintiff's interpretation does not necessarily follow. Indeed, plaintiff's interpretation is illogical when reading the ALJ's opinion as a whole.

First, Thomas Reed, the vocational expert ("VE") did not have any problem interpreting the RFC. At the hearing, the ALJ asked the VE whether an individual with plaintiff's age, education, past work experience, and RFC could obtain employment. (AT 56–57.) The VE concluded yes, and that such an individual could be a "general officer clerk at a light, unskilled level;" "a housekeeper, or housekeeping cleaner, at a light, unskilled level;" or "a hand packer or

hand packager at a light, unskilled level." (AT 58–59.) Plaintiff's attorney then specifically asked the VE whether the same hypothetical person would be able to perform any jobs in the economy if "30 percent of the time [he] would be off task and unable to perform simple repetitive tasks." (AT 60.) The VE replied that such a person would not be employable. (Id.) Yet, at no point did the ALJ adjust the RFC, nor did the VE revise his testimony in response to the ALJ's hypothetical. Thus, it is reasonable to infer that neither the ALJ nor the VE understood the RFC to mean that plaintiff was unable to perform simple repetitive tasks for one-third of a work day.

Second, the ALJ explicitly held that "claimant's mental RFC reflects Dr. Morris' opinion that the claimant can perform simple repetitive tasks." (AT 22.) Nowhere in his opinion did Dr. Morris suggest that plaintiff could only perform such tasks for a limited period of the day. (See AT 89–90.) This strongly suggests that the ALJ did not intend for the RFC to indicate that plaintiff was only capable of performing simple repetitive tasks for two-thirds of the day. What is more, plaintiff has not pointed to any other portion of the ALJ's decision or the administrative record to support his interpretation of the RFC.

Third, to interpret the RFC as plaintiff suggests creates surplus language and an absurd result. If, as plaintiff asserts, the additional limitations—the ability to occasionally understand, remember, and carry out detailed and complex instructions—are "inconsistent and meaningless," then the RFC includes a whole sentence that the court must completely ignore. (See ECF No. 17 at 11.) Ignoring this sentence leaves surplus language in the RFC. Moreover, only by ignoring this sentence, and assuming that the ALJ meant these words to have no meaning, can one interpret the RFC as plaintiff has, and understand it to mean that plaintiff is incapable of working for one-third of the day, and never capable of tasks more than simple. Such an interpretation would be an absurd result, where, as here, the ALJ clearly opined that plaintiff is occasionally able to perform detailed and complex tasks.

Therefore, based upon the hearing record, the ALJ's opinion, and common principles of interpretation, the RFC is not unintelligible. The court reasonably infers that the ALJ determined that plaintiff's mental RFC included the ability to understand, remember, and carry out detailed and complex job instructions up to one-third of a work day, and the ability to understand,

remember, and carry out detailed and simple job instructions for the remainder of a work day. As a result, the RFC does not preclude plaintiff from working, and there is no basis for remand.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated: September 25, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.16-872.caliguire.order re MSJ